```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ERIC J. STIGGLE, SR.,            :
         Plaintiff,              :
                                 :
v.                               : CIV ACTION NO.: 3:18-CV-01066 (AWT)
                                 :
PETER REICHARD, J. CLACHRIE,     :
DARRIN O'MARA, JEREMIAH LAMONT   :
and THE CITY OF NEW LONDON,      :
                                 :
         Defendants.             :
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Eric J. Stiggle, Sr. ("Stiggle"), proceeding pro se, brought this action claiming that New London police officers violated his Fourth Amendment rights when they obtained a copy of his medical records without his written consent or a warrant. A motion to dismiss was granted with respect to the claims against all of the defendants except Jeremiah Lamont ("Officer Lamont") and Justin Clachrie ("Officer Clachrie"). Officers Lamont and Clachrie now move for summary judgment. For the reasons set forth below, their motion is being granted.

I. **FACTUAL BACKGROUND**

On April 15, 2010, Officers Clachrie, Darrin O'Mara, and Lamont responded to a domestic disturbance call in the area of 47 Coit Street in New London, Connecticut. Upon their arrival, the officers met the victim, Sara Decoster. She informed the officers that she and her husband, the plaintiff, were arguing

-1-

when he became physical with her on the sidewalk across from the Southeastern Council on Drug Dependence ("SCAD") building. Decoster told officers that the plaintiff put both of his hands around her neck and pushed her down on a nearby bench. The victim described the plaintiff's actions as "choking her," but the officers did not notice any marks or redness on her neck, shoulders or face. Decoster stated that the plaintiff attempted to pull her car keys out of her hand; that she struggled to keep a grip on them; and that the plaintiff was able to pull the keys away from her and her hand was cut as a result. The plaintiff left the scene in the victim's car.

During the interview, "Decoster stated Stiggle has mental illness including being bipolar. She said he may be in a "manic episode," and possibly suicidal." Police Records (ECF No. 37-7) at 14. Decoster also gave a written statement in which she wrote, among other things, "[m]y husband has many medical issues which he takes medication for. I believe that he may be in a manic episode." Id. at 8. "This information was forwarded to area departments in an attempt to locate [the plaintiff]." Id. at 14. Officer Clachrie also "spoke to social worker Tabatha Maiorano from the Connecticut Department of Mental Health and she verified that Stiggle has a history of mental illness as well as substance abuse." Id. Although the plaintiff alleges in

his complaint that Officer Clachrie also called SCAD and requested and received a copy of the plaintiff's medical records from that facility, there is no evidence that Clachrie did so. The plaintiff bases this allegation on a review of the police incident reports, but there is no mention in the incident reports of anyone contacting or obtaining from SCAD the plaintiff's medical file.

A description of the plaintiff and the vehicle were broadcast over the hotline to area police departments, including some in Rhode Island. A missing/endangered person entry was also entered into the NCIC system.

Shortly thereafter, the New London police dispatcher received a phone call from the plaintiff. The plaintiff stated over the phone that he was drinking, should not be driving, had a gun and was going to kill himself. Sergeant Strecker of the New London Police Department spoke to the plaintiff over the phone while dispatchers attempted to locate him. Using a GPS locator from the plaintiff's phone, dispatchers determined that the plaintiff was near Westerly, Rhode Island. The plaintiff stated that he was coming back to New London, but he never arrived at police headquarters. He was later located in the area of North Kingstown, Rhode Island, where he was engaged in a pursuit with police on Interstate 95. The pursuit was terminated

in the area of Providence, Rhode Island. Just over an hour after the first pursuit, the plaintiff was again located and was engaged in another pursuit with police. During this pursuit, the plaintiff's vehicle crashed, and he was subsequently taken into custody.

The plaintiff ultimately pled guilty to the crimes of assault in the second degree, kidnapping in the first degree, unlawful restraint in the first degree, and larceny in the second degree. He appealed his sentencing in that case. Subsequently he filed a habeas petition. He states that it was in connection with the appeal of the denial of that habeas petition that he first learned that New London police officers had contacted Social Worker Maiorano and obtained information about his medical history.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgement . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . .

. if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant. . . and draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the

nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 2007) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067,

1072 (2d Cir. 1993)(quotation marks, citations, and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Because the plaintiff in this case is proceeding pro se, the court must read the plaintiff's pleadings and other documents liberally and construe them in a manner most favorable to the plaintiff. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Moreover, because the process of summary judgment is "not obvious to a layman," Vital v. Interfaith Medical Ctr., 168 F.3d 615, 620 (2d Cir. 1999), the district court must ensure that a pro se plaintiff understands the nature, consequences, and obligations of summary judgement, see id. at 620-621. Thus, the district court may itself notify the pro se plaintiff as to the nature of summary judgement; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id.

After reviewing the defendants' memorandum in support of summary judgment and the plaintiff's submissions in opposition

to summary judgment in this case, the court concludes that the plaintiff understands the nature, consequences and obligations of summary judgment. The defendants served the plaintiff with the notice to pro se litigants required by Rule 56(b), and the defendants' memorandum states the nature and consequences of summary judgment. The plaintiff submitted a response to the defendants' motion which identifies what he believes are genuine issues of material fact.

### III. DISCUSSION

The defendants contend that there was no Fourth Amendment violation because the plaintiff had no expectation of privacy in the medical information provided to them by Social Worker Tabatha Maiorano, and that even if there was a Fourth Amendment violation, they are entitled to qualified immunity. The defendants also argue that there was no Fourth Amendment violation because they acted based on exigent circumstances. The court concludes that the defendants are entitled to summary judgment because the plaintiff had no reasonable expectation of privacy and because the defendants acted based on exigent circumstances. Thus, the court does not reach the issue of qualified immunity.

**A. Fourth Amendment Expectation of Privacy**

The defendants argue that "[t]he information provided by Social Worker Maiorano did not belong to the Plaintiff and given that it was an oral conversation, certainly could not be in his possession. The information was in the possession of Social Worker Maiorano and therefore the Plaintiff could not have an expectation of privacy in it under the law of this circuit." Def. Mem. (ECF No. 37-1) at 8. The court agrees.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons. . . against unreasonable searches and seizures. . ." U.S. Const. amend. IV. In United States v. Miller, 425 U.S. 435 (1976), a case involving bank records, the Supreme Court stated:

> This court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

Id. at 443.

This holding has been applied in the context of medical records. In Schlosser v. Kwak, 2020 WL 4003502 (D. Conn. July 15, 2020), the court held that an individual does not have an expectation of privacy in medical information included in

-10-

probation violation warrant affidavits. The court noted that even if an individual "voluntarily provided the medical information to a third party with the expectation that the information would remain confidential, that would not create a Fourth Amendment expectation of privacy." Id. at *8-9. See also Webb v. Goldstein, 117 F. Supp. 2d 289 (E.D.N.Y. 2000)(holding that medical records neither belonged to nor were in the plaintiff's possession, but were property of New York State, so the plaintiff had no Fourth Amendment expectation of privacy).

The plaintiff maintains that the defendants had no legal authority to obtain the medical records, that they did not have a warrant, and that they already knew of his mental condition. Pl. Opp. to Def.'s Mot. Summ. J. (ECF No. 44) at 1-2. However, these factual contentions are not material to the determination that there was no Fourth Amendment violation because the plaintiff did not have a reasonable expectation of privacy with respect to the information the defendants obtained from the social worker.

Thus, the defendants are entitled to judgment as a matter of law because the plaintiff had no Fourth Amendment expectation of privacy.

**B. Exigent Circumstances**

"It is well settled. . . 'that the warrant requirement of the Fourth Amendment must yield in those situations in which exigent circumstances require law enforcement officers to act without delay.'" U.S. v. Moreno, 701 F.3d 64, 72-73 (2d Cir. 2012)(quoting United States v. Gordils, 982 F.2d 64, 69 (2d Cir. 1992)). In U.S. v. Klump the court stated that:

> The test to determine whether exigent circumstances exist "is an objective one that turns on … the totality of the circumstances confronting law enforcement agents in the particular case." [United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990)]. The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, see United States v. Zabare, 871 F.2d 282, 291, 292 (2d Cir. 1989), to believe that there was an "urgent need to render aid or take action," MacDonald, 916 F.2d at 769 (internal quotation marks omitted.

536 F.3d 113, 117-118 (2d Cir. 2008).

There are six factors that serve as "guideposts" for determining the existence of exigent circumstances:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed a crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

Moreno, 701 F.3d at 73. Because this case did not involve a physical entry into a premises to apprehend a suspect the police believed to be in the premises and might escape, the fourth, fifth, and sixth factors are not relevant to the analysis.

Greenwald v. Town of Rocky Hill, 2011 WL 4915165, (D. Conn. Oct. 17, 2011), involved a potential suicide. In that case, officers responded to a call from the plaintiff's girlfriend informing them that the plaintiff was going to commit suicide using a gun. The court found that "a reasonable officer could conclude that it was reasonable for Defendants to believe that Greenwald was in distress and in need of their assistance and therefore there were exigent circumstances that justified the warrantless entry." Id. at *7. Similarly, in Russo v. City of Cincinnati, 953 F.2d 1036, 1043-44 (6th Cir. 1992), the court found that it was reasonable for officers to enter the plaintiff's property during an encounter because they believed the plaintiff was in possession of two large knives and was mentally disturbed. The court noted that it was not aware of any precedent for the proposition that an officer's need to act to rescue what that officer believes to be a suicidal person does not constitute exigent circumstances. Id. at 1044.

As to the relevant factors set forth in Moreno, here there was clear probable cause to believe that Stiggle had committed a

crime. His wife had described in detail how Stiggle had assaulted her and had submitted a written statement. As to the gravity or violent nature of the offense, while assault is not among the most serious of offenses, the offense was a violent offense and, in addition, the officers were faced with a grave situation in that they were informed that the plaintiff had a history of mental health issues and was suicidal and, relevant to the second factor, was in fact armed with a gun and knives--not simply reasonably believed to be so. Thus, the officers were confronted with a situation where a suspect had committed an offense that was violent in nature, where they had been informed that the suspect was armed with weapons, and where a reasonable officer would have concluded that the suspect was a danger to the safety of himself as well as police officers who might interact with him and members of the public. Under such circumstances, there was a need to find out as much information as possible about the nature of the suspect's mental health issues before interacting with him so that the officers would have information that would be important in determining the best way to manage that interaction. Under these circumstances, it was objectively reasonable for the defendants to believe that exigent circumstances existed such that they did not have time to obtain a warrant before speaking with Social Worker Maiorano.

The plaintiff maintains that he was in the custody of the Rhode Island state police so there was no need to obtain his medical records without a warrant. However, there is no genuine issue as to the fact that at the time that Officer Clachrie obtained the information from Social Worker Maiorano, the plaintiff's location was still unknown to the New London police officers.

Thus, the defendants are entitled to judgment as a matter of law on the basis that they acted based on exigent circumstances.

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion For Summary Judgment (ECF No. 37) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 12th day of July 2021, at Hartford, Connecticut.

                                                /s/ AWT
                                       Alvin W. Thompson
                               United States District Judge